JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Yanko Mansaray appeals his convictions for two counts for possession of drugs, two counts for drug trafficking, and one count for possession of criminal tools. He assigns the following errors for our review:
 "I. The trial court erred in denying the motions to suppress."
 "II. The trial court abused its discretion in consolidating the two separate, independent cases for one trial."
 "III. Appellant's guilty verdicts were based upon insufficient evidence."
 "IV. The guilty verdicts were against the manifest weight of the evidence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Mansaray's convictions. The apposite facts follow.
 {¶ 3} Mansaray was indicted in two separate cases. In Case No. CR-486992, he was indicted for two counts of possession of drugs, three counts of drug trafficking and one count for possession of criminal tools. These counts arose from Mansaray's conduct on May 31, 2006, when officers arrested him for selling ecstasy pills from a vehicle.
 {¶ 4} In Case No. CR-491214, he was indicted for one count each for drug trafficking and possession of drugs both with major drug offender and firearm specifications attached. He was also indicted for having a weapon while under disability and possession of criminal tools. These counts arose from Mansaray s *Page 4 
conduct on December 8, 2006, when U.S. Marshals discovered large quantities of ecstasy pills in his home while attempting to execute an arrest warrant on another person.
 {¶ 5} Pursuant to the State's motion, the two cases were joined for trial. Prior to trial, defense counsel filed a motion to suppress in both cases. The trial court denied both motions and the matter proceeded to a jury trial.
 Trial {¶ 6} The evidence at trial concerning Case No. CR-486992 showed that on May 31, 2006, Cleveland police executed a controlled buy of ecstasy using an informant[1] who had been previously arrested for selling ecstasy pills and who desired to help the police in exchange for a favorable resolution of the case against him. *Page 5 
 {¶ 7} The informant arranged to buy four hundred ecstasy pills from a middleman with the name of "Bink" who lived in a green and white house on East 90th Street. The informant was searched prior to the deal to ensure he did not have drugs or money in his possession. He was then given money with which to purchase the drugs. Because the department did not have sufficient cash available to purchase the entire amount, the plan was that the informant would show the money to the dealer, and the take-down would occur before the dealer counted the money.
 {¶ 8} The deal was to take place in front of Bink's house. Detective Sims proceeded to the scene to ascertain where Bink was situated. He observed a man in a red shirt in front of a green and white house. The officer stated the man fit Bink's description. The man was talking on a cell phone and looking down the street nervously. Shortly thereafter, Mansaray pulled up in a white car and spoke briefly to Bink.
 {¶ 9} The informant was escorted to the meeting place by undercover Officer John Vinson. The officer parked his pickup truck directly behind Mansaray's car; the informant exited the truck and entered the passenger side of Mansaray's car. Because the truck was higher than Mansaray's car, Officer Vinson was able to see into the car. He observed Mansaray and the informant talking. He then saw Mansaray lean and reach for something; the informant *Page 6 
and Mansaray then leaned towards each other and looked down. The detective surmised the transaction was taking place although he could not see what was actually transpiring. He notified the other detectives over the radio.
 {¶ 10} Undercover officers and a zone car proceeded to the area. When Bink saw the cars, he ran. Mansaray and the informant were removed from the car. The informant was found with both the flash money and the four hundred ecstasy pills in his possession. A search of Mansaray's person revealed two cell phones, but no drugs or cash. Approximately two grams of crack cocaine were found in the car's ashtray.
 {¶ 11} The jury found Mansaray guilty of all charges, except for the trafficking in cocaine count. The trial court sentenced him to a total of two years in prison to run consecutive to the term of eleven years the court imposed in Case No. CR-491214.
 Jurisdiction Regarding Case No. CR-491214 {¶ 12} Prior to addressing Mansaray's errors, we note that although Mansaray's assigned errors include arguments related to Case No. CR-491214, he failed to file an appeal from that case. The notice of appeal filed only relates only to Case No. CR-486992. A review of the lower court file indicates that although the cases were joined for trial, two separate journal entries were *Page 7 
entered for the convictions and sentences in each case and separate files were maintained.
 {¶ 13} The filing of a timely notice of appeal is a prerequisite to establishing jurisdiction in a court of appeals. Therefore, while in the general sense, this court has jurisdiction to hear appeals in criminal cases, that jurisdiction must be invoked by the timely filing of a notice of appeal. The failure to file a timely notice of appeal is a jurisdictional requirement that cannot be ignored.[2] Consequently, we have no jurisdiction to consider Mansaray's arguments that relate to Case No. CR-491214.[3]
 Motion to Suppress {¶ 14} In his first assigned error, Mansaray argues the trial court erred by denying his motion to suppress. He argues the police officers did not have a reasonable suspicion that criminal activity was taking place to support their investigatory stop and his subsequent arrest. We disagree.
 {¶ 15} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of *Page 8 
witnesses.[4] On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence.[5] After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met.[6]
 {¶ 16} In Terry v. Ohio, [7] the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[8] Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer.[9] We conclude the *Page 9 
officers had sufficient evidence establishing criminal activity was taking place. The officers, with the help of an informant, set up the controlled buy from a middleman with the name of "Bink." The officers were aware that four hundred ecstasy pills had been ordered. Bink arrived at the location at the arranged time. Shortly thereafter, Mansaray pulled up in his car and spoke briefly to Bink. The informant entered Mansaray's car and appeared to be looking down at something after Mansaray had leaned and reached back. Based on this evidence, it was reasonable to believe the transaction was taking place. Although no signal was given, Officer Sims was describing the events on his radio, so that the take-down officers were aware of what was transpiring.
 {¶ 17} Given these facts, where the officers orchestrated the controlled buy, and the buy occurred just as the informant had planned, it was reasonable for them to believe a drug transaction was taking place. The fact that Mansaray did not have drugs or money on his person is not surprising. The officers testified the department did not have enough money to purchase the drugs, so the informant was instructed to just show the money, but not give it to Mansaray. Additionally, the informant was thoroughly searched prior to the transaction to ascertain he did not have drugs on his person. There was no other way he could have obtained the drugs, except from Mansaray. Although Mansaray contends the informant could have received the drugs from Bink, the officers clearly *Page 10 
testified that although the informant and Bink briefly greeted each other, no contact occurred between the two. Once the officers confirmed the transaction had taken place, they had probable cause to arrest Mansaray.
 {¶ 18} Although this was the first time the officers had used this particular informant, this in no way impacted the weight they gave the informant's credibility. Officer Lewandoski testified he listened to the informant set up the deal with Bink on the speaker phone. Thereafter, the deal transpired just as the informant told them it would as they observed. Under these circumstances, the officers acted properly. Accordingly, Mansaray's first assigned error is overruled.
 Joinder of Cases {¶ 19} In his second assigned error, Mansaray contends the trial court erred by joining Case No. CR-486992 and Case No. CR-491214 for trial. We disagree.
 {¶ 20} We initially note that although Mansaray objected to the joinder prior to trial, he did not renew his objection at the close of the State's case or at the close of all the evidence. A defendant waives any claim of error concerning *Page 11 
joinder if the defendant fails to renew an objection at the end of the State's case or the conclusion of all the evidence.[10]
 {¶ 21} Even if Mansaray had renewed his objection to the joinder, however, we are not persuaded that joining the cases was improper. According to the Ohio Supreme Court, joinder is to be liberally permitted.[11] "The law favors joinder for public policy reasons, such as: to conserve judicial economy and prosecutorial time; to conserve public funds by avoiding duplication inherent in multiple trials; to diminish the inconvenience to public authorities and witnesses; to promptly bring to trial those accused of a crime; and to minimize the possibility of incongruous results that can occur in successive trials before different juries."[12]
 {¶ 22} Pursuant to Crim. R. 8(A), joinder of multiple offenses is permitted when the charged offenses are "of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." In the case at hand, the two indictments relate *Page 12 
to the same crime; both involve Mansaray's involvement with the possession and selling of ecstasy pills. Thus, the two crimes constitute evidence of his scheme or plan to deal in ecstasy.
 {¶ 23} The Supreme Court has also held that even if evidence is not admissible under Evid. R. 404, joinder is still proper if the evidence of each case is so simple and distinct that the jury could clearly segregate the evidence.[13]
 {¶ 24} In the instant case, the evidence was direct, not confusing, and involved very "simple and distinct" evidence.[14] The cases were argued separately. The prosecutor did not make any improper argument that the fact Mansaray was arrested on two separate occasions implied he was guilty of both charges. The trial court also specifically instructed the jury that each count was to be considered separately and the jury was not allowed to consider evidence from one case as evidence in the other. The jury complied with this instruction, as indicated by the fact they found Mansaray guilty of trafficking in the first case, but not guilty of trafficking in the second case.
 {¶ 25} Moreover, there was sufficient evidence to convict Mansaray regarding both indictments without necessitating the evidence of one *Page 13 
transaction to prove the other. Accordingly, Mansaray's second assigned error is overruled.
 Insufficient Evidence and Manifest Weight {¶ 26} In his third and fourth assigned errors, Mansaray contends his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.
 {¶ 27} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman[15] as follows:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[16]
 {¶ 28} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks, [17] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the *Page 14 evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 29} Mansaray argues his convictions were not supported by sufficient evidence because the officers did not observe the actual hand-to-hand transaction and the informant was found holding the drugs and money. Circumstantial evidence supports Mansaray's conviction for possession. It is true the officers did not observe the actual hand-off of the drugs. However, the informant was thoroughly searched prior to the transaction and was never out of the officers' sight after being searched. When the informant was pulled from the car, he had both the flash money and drugs in his possession. The only opportunity he had to obtain the drugs was from Mansaray. Proof by circumstantial evidence is sufficient to support a possession of drugs conviction.[18] Mansaray did briefly greet Bink prior to getting into Mansaray's car, but the officers testified that no contact occurred between the men.
 {¶ 30} The informant testified in Mansaray's defense and stated that he had never seen Mansaray before and denied engaging in a drug transaction with *Page 15 
him. However, the informant was incredibly hostile, repeatedly refusing to answer questions posed by the prosecutor. The jury obviously determined he was not a credible witness. Accordingly, Mansaray's third and fourth assigned errors are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] We use the term "informant" as a term of art. We note that attorneys liberally refer to those that aid the police in controlled drug buys as confidential informants or confidential reliable informants. However, the use of these terms implicates the law having to do with the issuance of warrants, reasonable suspicion of criminal activity, and probable cause, leading inexorably to Fourth Amendment issues of whether an informant is reliable, what makes him reliable, whether his identity can be revealed, etc. However, we note that both the United States Supreme Court and Ohio Supreme Court refer to individuals who help to arrange drug deals based on their knowledge of known drug dealers and then participate in the drug deal simply as "informants." See, Roviaro v. United States (1956), 353 U.S. 53;State v. Bays, (1999), 87 Ohio St.3d 15; State v. Butler (1984),9 Ohio St.3d 156; State v. Williams (1983), 4 Ohio St.3d 74; State v.Phillips (1971), 27 Ohio St.2d 294.
[2] State v. Alexander, 10th Dist. Nos. 05AP-129, 05AP-245, 2005-Ohio-5997, ¶ 17.
[3] Cf. State v. Stewart, Cuyahoga App. No. 86411, 2006-Ohio-813, ¶ 52.
[4] State v. Mills (1992), 62 Ohio St.3d 357, 366.
[5] State v. Retherford (1994), 93 Ohio App.3d 586, 592.
[6] Id.
[7] (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889.
[8] Id. at 21.
[9] State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
[10] State v. Martin, Cuyahoga App. No. 89030, 2007-Ohio-6062;State v. Williams, 9th Dist. No. 23560, 2008-Ohio-1048;State v. Fortson (Aug. 2, 2001), Cuyahoga App. No. 78240.
[11] State v. Schaim, supra.
[12] Id. at 59.
[13] State v. Schaim (1992), 65 Ohio St.3d 51, 59, 1992-Ohio-31;State v. Hamblin (1988), 37 Ohio St.3d 153, 158-159; State v.Roberts (1980), 62 Ohio St.2d 170.
[14] Schaim, supra at 59.
[15] (1978), 55 Ohio St.2d 261, syllabus.
[16] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[17] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[18] State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus; see also,State v. Oko, Cuyahoga App. No. 87539, 2007-Ohio-538, ¶ 47 (evidence supported possession because informant was searched prior to the transaction); State v. Baker, 10th Dist. No. 91AP-260 (circumstantial evidence supports possession conviction because informant was searched prior to the transaction.) *Page 1