[Cite as *State v. Thompson*, 2014-Ohio-4665.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 13CA41 |
| | : | |
| vs. | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| STACY R. THOMPSON, | : | <u>ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | **Released: 10/15/14** |

_____
APPEARANCES:

Robert W. Bright, Middleport, Ohio, for Appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Alison L. Cauthorn, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Stacy R. Thompson appeals her convictions in the Washington County Court of Common Pleas after a jury found her guilty of three counts of trafficking in drugs (heroin), each felonies of the fifth degree in violation of R.C. 2925.03(A)(1)& (C)(6)(a), and one count of trafficking in drugs (heroin), a felony of the fourth degree, in violation of R.C. 2925.03(A)(1) & (C)(6)(b). On appeal, Thompson contends the judgment of the trial court should be reversed because: (1) no confidential informant testified and therefore, Thompson did not have the opportunity to confront those

witnesses; (2) her convictions were not supported by sufficient evidence and/or were otherwise against the manifest weight of the evidence; (3) a member of the jury was the father of a confidential informant that testified against Thompson in another case in 2010; and, (4) Thompson received ineffective assistance of counsel. Upon review, we find no merit to Thompson's four assignments of error. Accordingly, we overrule all assignments of error and affirm the judgment of the trial court.

FACTS

{¶2} Stacy R. Thompson (Appellant) was indicted in 2012, in Washington County Common Pleas case number 12CR322, for two counts of trafficking in drugs, violations of R.C. 2925.03(A)(1) & (C)(6)(a). Count 1 of the indictment alleged Appellant knowingly sold or offered to sell a Schedule I controlled substance, heroin, on or about July 3, 2012, at a location on Pike Street in Marietta, Ohio. Count 2 of the indictment alleged Appellant again knowingly sold or offered to sell heroin on or about July 5, 2012 at locations on Pike Street. Both counts are felonies of the fifth degree.

{¶3} While the 2012 trafficking case was pending, Appellant was also indicted in 2013 for two counts of trafficking in heroin. The case number of the second indictment was 13CR139. Count 1 of the indictment alleged trafficking in violation of R.C. 2925.03(A)(1) & (C)(6)(b) on or

about January 24, 2013 on Franklin Street in Marietta, within the vicinity of school property.  This count is a felony of the fourth degree. Count two, also trafficking in heroin, alleged another violation of R.C. 2925.03(A)(1) & (C)(6)(a) on or about January 28, 2013 on Acme Street in Marietta. On May 31, 2013, the trial court filed an entry consolidating both case numbers 12CR322 and 13CR139.  The matter eventually proceeded to a jury trial on August 7 and 8, 2013.

{¶4}  At trial, the State presented testimony from Sergeant Brian Lockhart, Detective Joshua Staats, Detective Carrie Smithberger, and Detective Ryan Huffman.  These officers testified as to their observations on the relevant dates alleged in the counts against Appellant. During Detective Smithberger's testimony, she identified State's Exhibits I and J, audio recordings of two of the controlled buys.  However, defense counsel objected to admission of the recordings and the trial court ruled they were inadmissible hearsay.[1]  Where relevant, additional facts gleaned from the officers' testimony will be set forth in detail below.

{¶5}  Several forensic scientists from the Bureau of Criminal Investigations in London, Ohio (BCI), Jessica Toms, Amanda White, Jennifer Acurio, and Barbara Hoover, testified as to the State's exhibits and

---

[1] The transcript is not quite clear as to when counsel actually objected, but the matter and ruling is discussed at page 410.

the lab reports and opinions they prepared.[2] David Tornes, on behalf of the State, testified he was employed by the Washington County Sheriff's Office as an evidence technician, and he testified as to the chain of custody involved with the State's exhibits. Eric Arbaugh, an employee in the map office of the county courthouse, identified States' Exhibit M, an aerial view of the west side of Marietta.[3]

{¶6} Counsel for the State argued in closing there was both direct and circumstantial evidence of Appellant's guilt. Appellant was the "common denominator" in all four counts of trafficking in heroin. The defense put on no testimony. In closing, however, defense counsel argued there were no recordings and no confidential informants pointing the finger at Appellant. Counsel emphasized there was no evidence to convict Appellant beyond a reasonable doubt.

{¶7} Appellant was convicted of all four counts.[4] Appellant was before the court for sentencing on September 16, 2013 and a journal entry of

---

[2] It was stipulated between the attorneys that the forensic scientists testifying at trial were qualified to test the drugs in question and render opinions on their findings. These State's exhibits consisted of the suspected heroin obtained from the confidential informants during the controlled buys and the lab reports they prepared after testing the substances suspected to be heroin.

[3] Arbaugh testified to a distance of 552 feet between an address given to him by detectives and Harmar school. This testimony pertained to the allegation that Appellant trafficked within the vicinity of a school on January 24, 2013.

[4] The "Journal Entry: Guilty Verdicts" filed by the trial court on August 15, 2013 states: "The Court notes that this case was consolidated with Case No. 13-CR-139, upon the Motion of the Defendant, and in its instructions to the jury, and on its verdict forms it refers to the two original counts of Case No. 12-CR-322, as Counts One and Two respectively, and refers to the two counts of Case No. 13-CR-139, as Counts Three and Four of this case, respectively."

sentencing was filed on October 24, 2013. Appellant was sentenced to a definite period of twelve months for each conviction of counts one, two, and four, and to a definite period of eighteen months upon her conviction in count four of the consolidated cases. The sentences imposed for counts one, three, and four were to be served consecutively to each other and the sentence imposed for count two was to run concurrently to other sentences imposed. In the aggregate, Appellant received a definite prison term of forty-two months and she was ordered to pay the costs of prosecution. This timely appeal followed.

### ASSIGNMENTS OF ERROR

I. THE JUDGMENT OF THE TRIAL COURT SHOULD BE REVERSED BECAUSE NO CONFIDENTIAL INFORMANT TESTIFIED AND THUS DEFENDANT DID NOT HAVE THE OPPORTUNITY TO CONFRONT THOSE WITNESSES.

II. THE JUDGMENT OF THE TRIAL COURT SHOULD BE REVERSED BECAUSE THE STATE'S EVIDENCE WAS INSUFFICIENT TO MEET THE BURDEN OF PROOF AND/OR THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. THE JUDGMENT OF THE TRIAL COURT SHOULD BE REVERSED BECAUSE A MEMBER OF THE JURY WAS THE FATHER OF A CONFIDENTIAL INFORMANT THAT TESTIFIED AGAINST THE DEFENDANT IN ANOTHER CASE IN 2010.

IV. THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT THE TRIAL COURT LEVEL.

ASSIGNMENT OF ERROR ONE

A.  STANDARD OF REVIEW

{¶8}  Appellant has not cited specific evidence admitted in violation of the Confrontation Clause and, instead, makes a general complaint as to the absence of the confidential informants at trial. Appellant did not make specific objections at trial in order to properly preserve this issue for appeal. Failure to object to an alleged error waives all but plain error.  *State v. Keeley,* 4th Dist. No. 11CA5, 2012-Ohio-3564, ¶28.  Notice of Crim. R. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Rohrbaugh,* 126 Ohio St.3d 421, 2010-Ohio-3286, 934 N.E.2d 920, at ¶6; *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at paragraph three of the syllabus.  To find plain error, the outcome of trial clearly would have been otherwise. *State v. McCausland,* 124 Ohio St.3d 8, 2009-Ohio-5933, 918 N.E.2d 507, at ¶15; *State v. Braden,* 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, at ¶50.

B.  LEGAL ANALYSIS

{¶9}  Under Appellant's first assignment of error, she claims her Confrontation Clause rights were violated because only law enforcement

officers testified at trial, instead of the confidential informants.  Appellant contends she was denied her constitutional right to confront the only witnesses - the informants - on which the State relied to build its entire case against her. The law enforcement officer witnesses testified as to the details of the alleged drug sales contained in the four counts against Appellant, even though they were not directly involved in the alleged sales.  Appellant argues their testimony was essentially and entirely based upon the results of the actions of the informants.  As such, the informants were, in effect, witnesses for the prosecution yet not subject to cross-examination.

{¶10}  Appellee first notes Appellant has failed to separately argue the first two assignments of error in accordance with App. R. 16.  Pursuant to App.R. 12(A)(2),  this court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).  See *Wright v. Suzuki Motor Corp.* 4th Dist. Meigs Nos. 03CA2, 03CA3, and 03CA4, 2005-Ohio-3494, Fn.9.  Appellant has argued assignments of error one and two jointly. Though the appellate court has the option to address two or more assignments of error at once, the parties do not.  *Grimes v. Grimes,* 4th Dist. Washington No. 10CA23, 975 N.E.2d 946, Fn. 4.  However, "[It] is a

fundamental tenet of judicial review in Ohio that courts should decide cases on the merits." *Salisbury v. Smouse,* 4th Dist. Pike No. 05CA737, 2005-Ohio-5733, quoting *DeHart v. Aetna Life Ins. Co.* 69 Ohio St.2d 189, 192, 431 N.E.2d 644 (1982).  Therefore, in the interests of justice, we will address Appellant's assignments of error.

{¶11}  The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."  The Supreme Court of the United States has "held that this bedrock procedural guarantee applies to both federal and state prosecutions."  *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), citing *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065 (1965).  Likewise, Section 10, Article I of the Ohio Constitution provides, "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face."  Before its admission, "[w]here testimonial evidence is at issue * * * the Sixth Amendment demands what the common law required:  unavailability and a prior opportunity for cross examination." *Crawford,* 541 U.S. at 68.  The question of whether a criminal defendant's rights under the Confrontation Clause have been violated is reviewed under a de novo standard. *State v. Smith,* 162 Ohio App.3d 208, 2005-Ohio-3579,

832 N.E.2d 1286 (8th Dist.); *United States v. Robinson*, (C.A. 6, 2004), 389 F.3d 582, 592.

{¶12} Upon review, we find the rights afforded Appellant under the Confrontation Clause have not been compromised in this matter. In a similar case, *State v. Shinholster,* 9th Dist. Summit No. 22587, 2005-Ohio-5658, the defendant argued on appeal that he was denied his constitutional right of confrontation under *Crawford v. Washington* when repeated references to out of court statements by a confidential informant were used against him. The appellate court noted that review of the trial transcript, however, indicated the State did not elicit any testimony from its witnesses, law enforcement officers, regarding any statements made by the confidential informant in the case. The appellate court concluded because the trial transcript indicated none of the State's witnesses testified as to any statements made by the confidential informants, the rights accorded by the Sixth Amendment's Confrontation Clause were not implicated.

{¶13} In the case sub judice, the State chose to call the law enforcement officers involved in the controlled buys to testify as to their observations. The testimony of these officers is the heart of the State's case. The transcript reveals Appellant made no objections to the testimony of the

law enforcement officers.  We therefore review this assignment of error under a plain error standard.

{¶14}  Appellant also does not direct us to any portions of the transcript wherein the law enforcement officers were erroneously allowed to testify as to any testimonial statements of the confidential informants.  We are not persuaded by Appellant's argument that the confidential informants were, in effect, witnesses for the prosecution.  While the confidential informants may have been the best witnesses to provide direct evidence regarding the controlled heroin buys, the State chose not to call them.  There is no requirement that the State prosecute a case using the "best evidence" or "direct evidence."  We find no violation of Appellant's rights under the Confrontation Clause and no plain error arising out of the State's failing to call the confidential informants as witnesses.  As such, we overrule Appellant's first assignment of error and affirm the judgment of the trial court.

## ASSIGNMENT OF ERROR TWO

### A.  STANDARD OF REVIEW

{¶15}  When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at  trial to determine whether such

evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  See, also, J*ackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781 (1979).

{¶16}  This test raises a question of law and does not allow us to weigh the evidence. *State v. Martin,* 20 Ohio App.3d 172, 174, 485 N.E.2d 717 (1983).  Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson* at 319.  We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact. *State v. Thomas,* 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356 (1982); *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1986), paragraph one of the syllabus.

{¶17} Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. *State v. Banks,* 78 Ohio App.3d 206,

214, 604 N.E.2d 219 (1992); *State v. Martin,* 20 Ohio App.3d 172, 175, 485

N.E.2d 717 (1983). In determining whether a criminal conviction is against

the manifest weight of the evidence, we must review the entire record, weigh

the evidence and all the reasonable inferences, consider the credibility of the

witnesses, and determine whether, in resolving conflicts in the evidence, the

trier of fact clearly lost its way and created such a manifest miscarriage of

justice that the conviction must be reversed and a new trial granted.  *State v.*

*Garrow,* 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814; *Martin* at 175,

485 N.E.2d 717.

{¶18}  "A reviewing court will not reverse a conviction where there is

substantial evidence upon which the court could reasonably conclude that all

the elements of an offense have been proven beyond a reasonable doubt."

*State v. Eskridge,* 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two

of the syllabus.  Whether the evidence supporting a defendant's conviction is

direct or circumstantial does not bear on our determination. "Circumstantial

evidence and direct evidence inherently possess the same probative value

and therefore should be subjected to the same standard of proof." *Jenks* at

paragraph one of the syllabus.

### B.  LEGAL ANALYSIS

{¶19}  Appellant also contends that the jury's judgment was

based upon insufficient evidence and is against the manifest weight of the evidence. Specifically, Appellant asserts the State's entire case rested on the testimony of law enforcement officers that testified they did not actually witness an exchange. Appellant submits the State did not present sufficient evidence to meet its burden of proof and a reasonable trier of fact could not reasonably conclude that all of the elements of the charged offenses had been proven beyond a reasonable doubt when no officer testified at trial that he or she actually witnessed a drug sale by Appellant in any of the four incidents. For the reasons which follow, we disagree.

{¶20} Regarding count one, Detective Joshua Staats of the Major Crimes Task Force of the Washington County Sheriff's Department testified he participated in a controlled drug transaction on July 3, 2012. Detective Staats testified he picked up informant Cory Meeks and transported him to Marietta. Meeks was searched and given photocopied "buy" money and a recording device. Staats observed as Meeks got into the vehicle Appellant drove, a silver Durango, on the Kmart parking lot, and, a short time later, Meeks exited Appellant's vehicle and provided the officers with five unit doses of heroin in purple balloons. Staats testified he did not actually see the transaction take place inside the vehicle.

{¶21} Detective Carrie Smithberger, also of the Major Crimes Task Force in Washington County, worked with Detective Staats on July 3, 2012. She testified Cory Meeks contacted her to assist in setting up the controlled buy. Smithberger accompanied Officer Staats in driving Meeks to the Kmart parking lot. Smithberger corroborated Staats' testimony that he searched Meeks. Smithberger provided Meeks with the buy money and wiring equipment. Smithberger also observed Meeks getting into Appellant's vehicle on the Kmart parking lot. Smithberger specifically testified she could visually observe an exchange between Appellant and Meeks inside Appellant's vehicle. Smithberger corroborated Staats' testimony that Meeks returned to their vehicle with five balloons of suspected heroin.

{¶22} Regarding count two, Detective Smithberger testified to a similar encounter on July 5, 2012. She testified that Cory Meeks again contacted her to set up a controlled buy at the Kmart in Marietta. Smithberger testified they she searched Meeks and provided him with the photocopied buy money and recording device. Smithberger observed Appellant, with Brittany Martin in the passenger seat of the silver Durango, pick up Meeks and drive to the Las Trancas Restaurant. Then they returned to the Kmart parking lot and dropped off Meeks. Smithberger testified she

did not observe a hand-to-hand exchange during the buy, but was in sight of Appellant's vehicle the entire time and no one else got out of the vehicle. She testified the entire transaction took place during a five-minute time period. When Meeks returned to Smithberger's vehicle, he provided two balloons of heroin. Both Staats and Smithberger acknowledged that the transactions of July 3, 2012 and July 5, 2012 were not captured on video.

{¶23} Sergeant Brian Lockhart of the Major Crimes Task Force in Washington County worked with Detective Smithberger on July 5, 2012. He corroborated her testimony that Meeks was picked up and dropped off at the Kmart parking lot. He corroborated Smithberger's testimony that she searched Meeks and provided him with the photocopied buy money and recording equipment. Lockhart also observed Appellant enter the Kmart lot and Meeks enter into the silver Durango. Appellant drove to the Las Trancas restaurant and back to the Kmart lot, where he exited Appellant's vehicle and was picked up by the officers. Lockhart acknowledged there was a brief period of time where he could not see inside Appellant's vehicle. Lockhart also corroborated Smithberger's testimony that she searched Meeks and he provided the suspected heroin.

{¶24} Regarding count three, Detective Staats also assisted in the January 24, 2013 controlled buy on the west side of Marietta. The

transaction took place during daylight hours. Staats testified he sat on Virginia Street, near the Boathouse bar in an unmarked vehicle, while Detective Huffman was located on the other side of Virginia Street. Staats testified Huffman dropped the confidential informant, this time, a person named Mark McIntyre, off at the bar and McIntyre began walking on Franklin Street. Staats observed Appellant, in a dark blue hooded jacket, meet McIntyre on the sidewalk. Staats observed an exchange. The silver Durango was parked up the street. Staats testified as he drove past the two on the sidewalk, he saw an exchange of money.

{¶25} Detective Lockhart also testified he worked with Detective Staats on January 24, 2013. Lockhart testified he was a passenger with Sergeant Staats when he witnessed a hand-to-hand exchange between the confidential informant and Appellant on the sidewalk on Franklin Street in Marietta. Lockhart testified they maintained radio contact with Detective Huffman, but Huffman picked up the confidential informant after the transaction took place. Lockhart also testified the confidential informant was out of his line of vision for less than ten seconds.

{¶26} Detective Ryan Huffman of the City of Marietta, but assigned to the Major Crimes Task Force, also testified he was working on January 24, 2013. He testified McIntyre contacted him and a controlled buy was

arranged.  Huffman and an Officer Hornbeck picked up McIntyre in an unmarked vehicle.  McIntyre was searched and then transported to the west side of Marietta.  Officers Staats and Lockhart were performing surveillance in a different vehicle on the west side.  The meeting location was the Boathouse restaurant.  Huffman let McIntyre out of the vehicle on Gilman Street and watched him walk to Virginia Street.  Then Huffman lost sight of McIntyre, but McIntyre was in the sight of Staats and Lockhart.  Huffman was in radio contact with the other officers.  McIntyre then went onto Franklin Street and the other officers followed onto Franklin Street.  The other officers advised Huffman they observed a hand to hand transaction between Appellant and the informant.   Huffman admitted he did not see this hand to hand transaction.

{¶27}  Huffman then picked up the confidential informant who gave him the evidence and the recording device.  The informant was searched again.   He transported the confidential informant away from the area and returned to his office where he photographed the evidence and sealed it.

{¶28}  Regarding count four, Huffman further testified he worked with McIntyre again on January 28, 2013 to arrange a heroin deal.  McIntyre advised it would take place in the Kroger parking lot.  Huffman picked up McIntyre and searched him, finding no illegal contraband.  The informant

was transported to the location and called Appellant a few times. Huffman parked on the Kroger lot. Huffman again provided the buy money and recording device.

{¶29} On this occasion, the informant walked to the Pizza Hut end of the Kroger lot, in Huffman's sight the entire time. A red Chevrolet Cavalier driven by T. J. Gaughan arrived and parked at the Pizza Hut lot.[5] McIntyre went to the passenger side and obtained something from the passenger. McIntyre walked back to Huffman's location. When the red vehicle left, Huffman could see the passenger was Appellant. Huffman eventually met back with McIntyre on the parking lot. McIntyre was never out of Huffman's sight. When he got into the vehicle, he provided the substance he had purchased from Appellant, and the recording device. The informant was searched and dropped off elsewhere. Huffman went back to the station and secured the evidence.

{¶30} On cross-examination, Huffman acknowledged he had known McIntyre for 10 or 11 years and he had been through the criminal system quite a bit. McIntyre was paid $100.00 each for the separate transactions. McIntyre has used crack cocaine and heroin. At the time of trial, he was

---

[5] T.J. Gaughan was later charged with complicity.

held in the North Central Regional Jail in West Virginia on a burglary charge. He had been terminated as a confidential informant.

{¶31} Finally, Detective Staats also testified as to observations made on January 28, 2013. He testified he was in the Kroger area on Acme Street in Marietta when he observed a red Chevrolet Cavalier, driven by a male, pull in to the lot. Appellant was also in the vehicle. However, Staats acknowledged he lost sight of the vehicle and did not observe anyone meet with it. On cross-examination, Staats acknowledged he did not deal with setting up the confidential informants. He also did not make a written report.

{¶32} The State's case was proven, largely, by circumstantial evidence. Circumstantial evidence is sufficient to establish an element of any crime. *State v. Kutsar,* 8th Dist. Cuyahoga No. 89310, 2007-Ohio-6990, ¶20; see, *State v. Jenks,* 61 Ohio St.3d at paragraph one of the syllabus. In *State v. Mansaray,* 8th Dist. Cuyahoga No. 90647, 2009-Ohio-1237, the appellate court held that circumstantial evidence supported Mansaray's conviction. In *Mansaray,* the defendant was convicted of drug trafficking pursuant to a drug deal arranged by police between defendant and an informant. The police officers involved did not observe the actual hand-off of the drugs, however, when the police officers arrived, the informant had

drugs on him. The appellate court also noted the informant was thoroughly searched and was never out of the officers' sight after being searched. Thus, the only opportunity the informant had to obtain drugs was from the defendant. In *State v. Cunningham,* 6th Dist. Wood No. WD-08-063, 2009-Ohio-6970, Cunningham was convicted of three counts of trafficking in cocaine. Although Cunningham was recorded during each buy and the recordings were played for the jury, none of the officers involved directly observed any of the drug transactions.[6] Thus, the jury considered direct and circumstantial evidence. In *State v. Robinette,* 4th Dist. Jackson No. 669, 1992 WL 12983, at *4, this court held that the circumstantial evidence presented at trial sufficiently proved Robinette was aware he was selling marijuana.

{¶33} Further, we are mindful of the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier,* 73 Ohio St.3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000, citing *State v. Grant,* Ohio St.3d 465, 477, 1993-Ohio-171, 620 N.E.2d 50. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

---

[6] Cunningham's appeal was not based on sufficiency or manifest weight arguments.

*Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶34} It appears that here, the jury found the testimony of the four officers involved to be persuasive and credible, despite the admissions that, at times, they were unable to see an actual hand-to-hand transaction or to see inside Appellant's vehicle. We will not substitute our judgment for that of the jury under these circumstances. The officers testified that prior to each controlled buy, the informants were searched. As to count one, Detective Smithberger testified she observed the exchange made inside the silver Durango Appellant was driving. As to count two, although both officers admitted they did not see the exchange, there was testimony that the informant was the only person to get into Appellant's vehicle and, within five minutes, he returned with the substance later found to be heroin. As to count three, Staats and Lockhart testified they witnessed an exchange of money on the sidewalk between the informant and Appellant. Huffman lost sight of the informant for only a brief period of time. And as to count four, Huffman observed an exchange between Appellant, as passenger, and the confidential informant. Huffman also testified the informant was never out of his line of vision.

{¶35} Admittedly, there was also testimony that Detective Staats attempted to video the July 3, 2012 transaction, but it was raining and the camera did not record well. And, on the January 28, 2013 occasion, Staats acknowledged he did not deal with the confidential informant and did not make a written report. There was also testimony from Detective Smithberger that she did not videotape the transactions she was involved with. None of the searches of the informants were strip searches. The informants were paid minimal amounts. Testimony elicited on cross examination demonstrated that Mark McIntyre had a history of criminal activity and drug usage. But, it was in the province of the jury to evaluate the evidence and determine its weight and value.

{¶36} We conclude that there was both substantial and direct evidence upon which the jury could have concluded that all the essential elements of the counts charged had been proven beyond a reasonable doubt. Further, in light of the circumstantial evidence adduced at trial, we cannot conclude the jury lost its way and created a manifest miscarriage of justice by finding Appellant guilty of four counts of trafficking in heroin. As such, we overrule Appellant's second assignment of error and affirm the judgment of the trial court.

ASSIGNMENT OF ERROR THREE

## A.  STANDARD OF REVIEW

{¶37}  To succeed on a claim regarding error in the selection of a juror, Appellant must show that the error affected a substantial right- i.e., that is that it caused actual prejudice to the defendant. *State v. Wilhelm,* 5th Dist. Knox Nos.  03-CA-25, 03-CA-26, 2004-Ohio-5522, ¶17; *United States v. Delgado* (6th Cir.2003), 350 F.3d 520.

## B.  LEGAL ANALYSIS

{¶38}  Appellant also contends the judgment of the trial court should be reversed because a member of the jury was the father of a confidential informant that testified against the defendant in another case in 2010. During voir dire, prospective juror Nunn was questioned as to whether or not he recognized Appellant.  He responded that he did not recognize her.  After trial, Appellant claims to have learned that Nunn has some relationship to Christina Nunn Hines.[7]  Hines acted as a confidential informant against Appellant in a prior case, 10CR073.[8]  Appellant's counsel also acknowledges she has conducted a search of more than 100 cases and has no specific basis for arguing that Appellant's conviction should be overturned on the basis of the juror's apparent relationship to the previous confidential

---

[7] Appellant acknowledges she has not yet been able to confirm the relationship, but argues she is certain they are related as father and daughter.
[8] The briefs indicate this was verified by court personnel.

informant. Appellant however requests this court to consider the issue as a factor in determining whether or not to overturn Appellant's convictions.

{¶39} Appellee responds that Appellant's argument in the third assignment of error is based on information gained from an unexplained source after trial and is not contained in the record for our review. We agree with Appellee. *Wilhelm, supra*, at ¶15. (See *State v. Hooks,* 92 Ohio St.3d 83, 2001-Ohio-150, 748 N.E.2d 528, wherein the Supreme Court of Ohio noted: "[A] reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." The only evidence in the record regarding the selection of Juror Nunn is contained in the following exchange:

> The Court:  Mr. Nunn, you need to come to the jury box.  Good morning, sir.  Were you able to hear all of our questions and comments?
>
> Prospective Juror Nunn:  Yes, Your Honor.
>
> The Court:  Are there any you would have answered, had you been seated there?
>
> Prospective Juror Nunn:  Say that again.
>
> The Court:  Are there any questions that you would have answered, had you been seated there when we were asking them or any comments you would have responded to?
> Prospective Juror Nunn:  Well, I do have to say I - - outside of my profession, I do volunteer at a homeless shelter.
>
> The Court:  Okay.  Okay.  What's your profession sir.

Prospective Juror Nunn: I am a retired Marine and I work for the Bureau of Public Debt as an IT specialist.

The Court: Okay. Okay. Any other questions you would have answered? Okay, sir, do you understand - - and will you do this, will you be fair and impartial to both sides, decide the case on the evidence that's - - you hear in court and - - and the law as I give it to you, and give the case your undivided attention?

Prospective Juror Nunn: Yes, Your Honor.

The Court: Thank you. Attorney Schneider, you may inquire.

 * * *

Mr. Schneider: Any family or friends, close friend issues involving heroin abuse or drug abuse that would cause you maybe a problem sitting on the - -

Prospective Juror Nunn: My wife's - - my wife's sister's daughter has some chemical issues.

Mr. Schneider: All right. Does that fact cause you a greater problem sitting on a jury in which the crime charged is trafficking in drugs?

Prospective Juror Nunn: No.

Mr. Schneider: Any reason you feel you couldn't sit as a fair and impartial juror in this case?

Prospective Juror Nunn: No.

 * * *

Mr. Smith: All right. You say your wife's sister's daughter has issues with substance abuse?

Prospective Juror Nunn: Yes.

Mr. Smith:   What's her drug of choice?  Do you know?

Prospective Juror Nunn:   To speak it out, to know for sure, no.
I just kind of stay some distance (inaudible).

Mr. Smith:  Stay away - - as far away from it as you can get?
Prospective Juror Nunn:  that's correct.

* * *

Mr. Smith:  Do you recognize Miss Thompson?

Prospective Juror Nunn:  No.

 * * *

Mr. Smith:  Do you understand, the State has the burden of
proof?  Do you know what the burden of proof is?

Prospective Juror Nunn:  Beyond a reasonable doubt.
Mr. Smith:  Can you hold the State to that - - that standard?
Can you stay - - keep an open mind throughout the trial?  Any
other reason you don't believe you could sit on this jury?

Prospective Juror Nunn:  No.

Mr. Smith:  Pass for cause.

{¶40} Appellant's contention that Juror Nunn's apparent relationship

to Christina Nunn, a confidential informant in a previous case against

Appellant, is cause for her conviction to be overturned is based upon

information not properly in the record before us.  Furthermore, from what is

properly before us regarding the selection of Juror Nunn, we see no evidence

that Juror Nunn was unable to function as a fair and impartial juror in the

case. Appellant's assertion under this assignment of error is, further, "nothing more than speculation- and speculation cannot support a finding of actual prejudice." *Wilhelm, supra*, at ¶17, quoting *Delgado, supra.* As such, we find no merit to Appellant's third assignment of error and it is hereby overruled.

## ASSIGNMENT OF ERROR FOUR

{¶41} In Appellant's final assignment of error, she contends she received ineffective assistance of counsel. Specifically, Appellant argues: (1) her counsel failed to attempt to subpoena either of the confidential informants in the case; and, (2) her counsel failed to file a motion to suppress prior to trial. For the reasons which follow, we disagree.

### A. STANDARD OF REVIEW

{¶42} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441 (1970); *State v. Stout,* 4th Dist. No. 07CA5, 2008-Ohio-1366, ¶21. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904

(2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006 Ohio-2815, 848 N.E.2d 810, ¶95 (citations omitted). "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. No. 06CA3116, 2008-Ohio-968, ¶14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶43} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* 4th Dist. No. 07CA1, 2008-Ohio-482,

¶10, citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).

Therefore, a defendant bears the burden to show ineffectiveness by

demonstrating that counsel's errors were so serious that he or she failed to

function as the counsel guaranteed by the Sixth Amendment. *State v.*

*Gondor,* 112 Ohio St.3d 377, 2006 Ohio-6679, 860 N.E.2d 77, ¶62; *State v.*

*Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

{¶44}  To establish prejudice, a defendant must demonstrate that a

reasonable probability exists that but for counsel's errors, the result of the

trial would have been different. *State v. White,* 82 Ohio St.3d 15, 23, 693

N.E.2d 772 (1998); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373

(1989), at paragraph three of the syllabus.  Furthermore, courts may not

simply assume the existence of prejudice, but must require that prejudice be

affirmatively demonstrated. See *State v. Clark,* 4th Dist. No. 02CA684,

2003-Ohio-1707, ¶22; *State v. Tucker,* 4th Dist. No. 01CA2592 (Apr.2,

2002); *State v. Kuntz,* Ross App. No. 1691 (Feb. 26, 1992).

### B.  LEGAL ANALYSIS

1.  The failure to subpoena either of the confidential informants.

{¶45}  Appellant argues the identity of informant Corey Meeks was

revealed to Appellant nearly six months prior to trial.  Appellant also points

to Brittany Martin's letter to the prosecuting attorney, stating that Appellant

gave her a ride to meet with her cousin, Meeks, at Kmart and at the Mexican restaurant, references the two incidents in which Appellant was convicted of selling drugs to informant Meeks. Appellant argues the failure to subpoena Meeks prejudiced Appellant because Appellant was unable to establish the fact that Brittany Martin was meeting with Meeks. Appellant also argues that the identity of the other informant, Mark McIntyre, was known to counsel prior to trial and no effort was made to subpoena him for trial.

{¶46} Appellee responds by pointing out that Appellant successfully moved to exclude the audio recordings, which she must have believed would harm, not assist, her case at trial. Appellee argues Appellant is not able to show how the informants' testimony would have benefitted her and therefore, she is unable to demonstrate prejudice. Appellee also argues the "Brittany Martin" letter was prepared "after the fact" and demonstrates only that she was present at the scene. Appellee asserts Appellant is unable to show prejudice in this regard as well.

{¶47} "'Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" *State v. Siders,* 4th Dist. Gallia No. 07CA10, ¶19, quoting *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶143, quoting *State v. Treesh,* 90 Ohio St.3d 460, 490, 739 N.E.2d

749 (2001). We agree with Appellee that Appellant has failed to show prejudice by her counsel's failure to secure the confidential informant witnesses' presence at trial. Both informants Meeks and McIntyre could just have easily chosen to testify against Appellant. The fact that Appellant moved to exclude the audio recordings provides further evidence that the testimony of the informants would have hurt Appellant's defense rather than have assisted with it. Appellant likely did not want the recordings to come into evidence because they were accurate recordings of the conversations between her and the informants and provided strong evidence of guilt. The failure to secure the presence of these witnesses at trial appears to be a strategic decision of counsel.

{¶48} It is also only speculation that, had Meeks testified, he would verify the contents of the Brittany Martin letter, that Appellant was actually taking Martin to see Meeks. Prejudice must be affirmatively demonstrated. See *Clark, supra Appellant* is not able to show prejudice, i.e., that, but for her counsel's purported errors, the result of the proceeding would have been different. We find no merit to this argument.

2. The failure to file a motion to suppress.

{¶49} Appellant also argues trial counsel did not file any motion to

suppress witness testimony, statements, documentary evidence, or other evidence. As such, Appellant went to trial "blind." "The failure to file or pursue a motion to suppress does not automatically constitute ineffective assistance of counsel." *Siders, supra,* at ¶11, quoting *State v. Taylor,* 4th Dist. Washington No. 07CA11, 2008-Ohio-482, at ¶10, citing *State v. Madrigal,* 87 Ohio St.3d 378, 389, 200-Ohio-448, 721 N.E.2d 52 (internal citations omitted.). Instead, to establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question. *Siders, supra*, citing *State v. Brown,* 115 Ohio St.3d 55, 20070Ohio-4837, 873 N.E.2d 858, at ¶65, citing *State v. Adams,* 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, at ¶35. In other words, the defendant must show that a motion to suppress would have had a reasonable probability of success. *Siders, supra*; see, *State v. Santana*, 90 Ohio St.3d 513, 515-516, 2001-Ohio-7, 739 N.E.2d 798; see also, *State v. Chamblin,* 4th Dist. Adams No. 02CA753, 2004-Ohio-2252, at ¶34, citing *State v. Nields,* 93 Ohio St.3d 6, 2001-Ohio-1291, 752 N.E.2d 859(2001).

{¶50} Here, Appellant does not specify what witness testimony should have been suppressed by a favorable motion ruling. Appellant does not specify which statements made my which witnesses should have been

suppressed.  Appellant does not specify what documentary evidence merited suppression.  As such, she cannot show prejudice based on speculation of vaguely-described content of a motion to suppress.

{¶51}  Next, Appellant points out the audio recordings of the incidents were, in fact, excluded the day before trial.  Thus, such a motion would have had a reasonable probability of success.  Appellant  argues had the audio recordings  been suppressed earlier in the proceedings, trial counsel could have taken other steps, such as entering into plea negotiations from a stronger position and/or filing another motion to suppress or limit the testimony of the law enforcement officers concerning the details of incidents to which the officers did not witness an exchange.  This again, is speculation.

{¶52}  Appellant, here, cannot establish prejudice because the audio recordings were, in fact, excluded.  Appellant's argument focuses on the actions she may have taken, had a motion to suppress been filed and granted, and is based on speculation.  As such, Appellant's argument is without merit.

{¶53}  In sum, we do not believe Appellant can show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  We do not find Appellant was prejudiced by the

actions of trial counsel with regard to counsel's failure to subpoena the

confidential informant witnesses or the failure to file a motion to suppress.

As such, we also overrule this assignment of error.  Having overruled all of

the assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Harsha, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**