[Cite as *State v. Cisler*, 2016-Ohio-5016.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 15CA43 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| BRANDON RAY CISLER, | : | |
| | : | |
| Defendants-Appellant. | : | **Released: 07/12/16** |

APPEARANCES:

William B. Summers, Parkersburg, West Virginia, for Appellant.

Paul G. Bertram, III, Marietta City Law Director, and Catherine Ingram Reynolds, Marietta City Assistant Law Director, Marietta, Ohio, for Appellee.

McFarland, J.

{¶1} Brandon Ray Cisler appeals the October 2, 2015 judgment of the Marietta Municipal Court convicting him of domestic violence, R.C. 2919.25(C), a misdemeanor of the fourth degree. On appeal, he asserts that: (1) the trial court erred by failing to advise him of his right to post bond; and (2) the trial court erred by failing to properly advise him of the effect of his plea upon his right to possess a firearm. Having reviewed the record, we find no merit to Appellant's arguments. As such, we overrule the sole assignment of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} A complaint was filed with the Marietta City Police Department by Cisler's step-mother, alleging that on September 30, 2015, Appellant had threatened to "beat her ass." On October 1, 2015, Appellant was arrested on a charge of domestic violence by threat of force, and taken to the Washington County Jail. On October 2, 2015, Appellant was arraigned by video, pled no contest, and sentenced.[1]

{¶3} This appeal followed. Additional relevant facts are set forth below.

ASSIGNMENT OF ERROR

"I. THE TRIAL COURT ERRED BY FAILING TO ADVISE THE APPELLANT OF HIS RIGHT TO POST BOND AND THE TRIAL COURT ERRED BY FAILING TO PROPERLY ADVISE THE APPELLANT OF THE EFFECT OF HIS GUILTY PLEAS ON HIS RIGHT TO POSSESS A FIREARM.

STANDARD OF REVIEW

{¶4} Crim.R. 10(C) is mandatory and not merely a procedural guideline. It sets forth fundamental and constitutionally protected rights that must be observed by the court. Failure of the court to inform a defendant of the rights pursuant to the criminal rules constitutes "prejudicial error." *State v. Orr*, 26 Ohio App.3d 24, 25, 498 N.E.2d 181 (1985)(Record did not reflect defendant was advised of her rights pursuant to Crim.R. 5(A), 10(C) and 11(E)). *State v. Groner*, 7th Dist. Mahoning

---

[1] Appellant's sentence was 15 days of jail, with credit for one day served and the remainder suspended; $150.00 fine and costs; and one year of non-reporting probation. The terms of probation specified that Appellant was to have no contact with the victim and that Appellant could not own or possess firearms during the probationary year.

No. 96CA144, 1998 WL 15865, (Mar. 31, 1998).  A violation of the criminal rule

invites reversal. *State v. Richter,* 92 Ohio App.3d 395, 399, 635 N.E.2d 1295, (6th

Dist.1993).

## LEGAL ANALYSIS

{¶5} While Appellant's arguments relate specifically to an alleged violation

of Crim.R. 10(C), in essence, he challenges the knowing, voluntary, and intelligent

nature of his plea based on alleged defective arraignment procedure.  Crim.R.

11(E) details the conditions under which a court may accept a guilty or no contest

plea in misdemeanor cases. *State v. Newman,* 4th Dist. Scioto Nos. 97CA2507,

97CA2525, 1998 WL 151386 (April 3, 1998), *3.  The rule provides in pertinent

part:

> "In misdemeanor cases involving petty offenses the court may refuse
> to accept a plea of guilty or no contest, and shall not accept such plea
> without first informing the defendant of the effect of the pleas of
> guilty, no contest, and not guilty.

The rule requires that the record affirmatively demonstrate that a plea of no contest

was entered voluntarily, intelligently, and knowingly. *Newman, supra,* citing *State*

*v. Joseph,* 44 Ohio App.3d 212, 213, 542 N.E.2d 690, 691(1988).  In order to

comply with the rule, the trial court must engage the defendant in a "meaningful

dialogue." *Id.*; *State v. Luhrs,* 69 Ohio App.3d 731, 591 N.E.2d 1251 (1990) (lack

of dialogue of any kind between trial court and defendant personally at time of no

contest plea accepted required reversal.)  The failure to substantially comply with

Crim.R. 11 constitutes reversible error. See, e.g., *State v. Mascaro,* 81 Ohio

App.3d 214, 610 N.E.2d 1031 (9th Dist. 1991); *Eastlake v. DeNiro,* 21 Ohio

App.3d 102, 487 N.E.2d 324 (11th Dist. 1984); *State v. Hays,* 2 Ohio App.3d 376,

442 N.E.2d 127 (1st Dist. 1982).

{¶6} By way of an affidavit attached to his brief, Appellant advises he

watched an arraignment video while he was jailed with five other people. The

affidavit further informs that he was unable to make a phone call from the jail to

call a lawyer or his father, and he was very confused about his rights. Appellant

argues the trial court failed to fully inform Appellant of his Crim.R. 10(C) rights,

and at no time did the Court inform Appellant that he had a right to post bond and

to be released the same day. Appellant further asserts it is clear that he was mostly

concerned with being able to return to work on the following Monday. Appellant

argues that the law requires the trial judge to conduct an individualized inquiry to

determine if the defendant actually understood his rights before accepting a plea,

and that the transcript shows there was no meaningful dialogue between the court

and him. Appellant concludes he had little option other than to plead or lose his

job. The State concedes that the trial court did not give an explicit "word for

word" explanation of the right to bail, but argues there was no showing of a

prejudicial effect.

{¶7} We first observe this Court cannot consider Appellant's affidavit attached to his brief, as it is evidence that was not made part of the record below and has not been made part of the record on appeal. App.R. 9 and App.R. 12(A)(1)(b). See *Didonato v. Didonato,* 9th Dist. Medina No. 2645-M, 1998 WL 18698, (Feb.11, 1998), Fn.2.  We therefore turn our attention to the arraignment procedures outlined in Crim.R. 10.

{¶8} Pursuant to Crim.R. 10(D) a trial court may conduct joint arraignments of multiple defendants by providing a general announcement of their rights as prescribed. *State v. Bowers,* 3rd Dist. Union No. 14-11-12, 2012-Ohio-1585, ¶ 10. Joint arraignments are commonly employed by municipal courts. Katz, Martin, Lipton & Crocker, Baldwin's Ohio Practice Criminal Law 42:6 (2011).  Through joint arraignments, trial courts inform defendants both of their constitutional rights as well as the effect of the pleas of no contest, guilty, and not guilty. *State v. Jones*, 116 Ohio St.3d 211, 2007–Ohio–6093, Fn.3.  However, the mere playing of an audio CD does not satisfy the requirement in Crim.R. 10(C) prescribing a determination by the trial court that the defendant actually understood his rights. *Gearig,* 6th Dist. Williams No. WM-09-012, 2010-Ohio-939, ¶ 14.  This provision requires an individualized inquiry. See *State v. Donkers,* 170 Ohio App.3d 509, 2007-Ohio-1557, 867 N.E.2d 903 (11th Dist.)  A "one-sided rights colloquy to all defendants does not provide the discourse required by the rules concerning initial

appearances to ensure comprehension of the rights." *State v. Bayer*, 102 Ohio App.3d 172, 180, 656 N.E.2d 1314 (11th Dist.1995)( discourse between court and defendant did not disclose defendant read pamphlet provided by court regarding procedures, that he understood it if he did read it, or if he was literate.)

{**¶9**} Crim.R. 10 provides in pertinent part:

(C) Explanation of Rights. When a defendant not represented by counsel is brought before a court and called upon to plead, the judge or magistrate shall cause the defendant to be informed and shall determine that the defendant understands all of the following:

(1) The defendant has a right to retain counsel even if the defendant intends to plead guilty, and has a right to a reasonable continuance in the proceedings to secure counsel.

(2) The defendant has a right to counsel, and the right to a reasonable continuance in the proceeding to secure counsel, and, pursuant to Crim.R. 44, the right to have counsel assigned without cost if the defendant is unable to employ counsel.

(3) The defendant has a right to bail, if the offense is bailable.

(4) The defendant need make no statement at any point in the proceeding, but any statement made can and may be used against the defendant.

{**¶10**} *Gearig, supra,* observed at ¶ 16:

"In *State v. Diroll,* the Eleventh District Court of Appeals emphasized, 'We believe, as a general matter, that a trial court is permitted to use a videotape to inform defendants of their rights. However, it is crucial to remember that the trial court is ultimately responsible for ensuring that defendants are informed of their rights and understand those rights, regardless of the specific method utilized. If the court cannot make the record clear in this regard, there will be a

risk of reversal for failure to properly advise.' " *Id.,* 11th Dist. No.2006-P-0110, 2007-Ohio-6930, ¶ 37. Crim.R. 10(C) requires that a defendant who is not represented by counsel and who is called upon to plead, shall be informed of the aforementioned enumerated rights. *Gearig, supra.*

{¶11} In *State v. Schniable*, 7th Dist. Columbiana No. 95-CO-60, 1997 WL 177848 (April 9, 1997), the appellate court observed that the burden of showing compliance with the criminal rules lies squarely upon the shoulders of the trial judge who must be able to demonstrate there has been a "meaningful dialogue" between the court and defendant before a "no-contest" plea is accepted. *Id.* at *3; *Luhrs*, *supra,* at 735, citing *Joseph, supra.* A meaningful dialogue between the court and defendant is required whenever the possibility of incarceration exists. *Garfield Hts. v. Brewer*, 17 Ohio App.3d 216, 217, 479 N.E.2d 309 (8th Dist. 1984). A written waiver of counsel is not a substitute for compliance with the requirement of an oral waiver in open court. *Id.*

{¶12} In *Schniable,* the trial court advised appellant of the charges against him and of the penalties for each charge. However, the record further indicated the trial court went from "Do you wish to have an attorney" to "Do you want to go forward and enter a plea", to a finding of guilt. The appellate court held this was not meaningful dialogue from which the court could conclude appellant waived his constitutionally protected rights in a voluntary, intelligent and knowing manner.

{¶13} *State v. Fonseca*, 124 Ohio App.3d 231, 705 N.E.2d 1278 (11th Dist. 1997), reiterated the law in *Orr, supra,* that failure by the trial court to inform the accused of his rights as required by Crim.R. 10(C) constitutes prejudicial error. In *Fonseca,* the appellant was not represented by counsel at the time that he entered his guilty plea. The trial court read the charges, the maximum penalties involved, and the underlying facts of each offense to appellant, but after doing so, the court realized that appellant did not understand English very well. After learning this, the court did not assure that the charges were explained to appellant in Spanish so that he could understand the nature of the charge. Further, the court never informed appellant that (1) he had a right to counsel, (2) he was not required to make any statement, and (3) he was required to request a jury trial in a petty offense case. When the court asked appellant how he wished to plead and he pleaded guilty, the court was required to demonstrate compliance with the requirements of Crim.R. 10 and 11. The appellate court held that none of the applicable requirements of Crim.R. 10 were satisfied because the trial court did not inform appellant of his right to an attorney, that one would be assigned to him if he could not afford an attorney, and that he was not required to make any statement. *Id.* at 236. Fonseca's plea was vacated on the basis that it did not satisfy the requirements of Crim.R. 10.

{¶14} In *State v. Groner*, *supra,* although the trial court indicated to appellant twice on the record that he had to waive his right to a lawyer in order for the court to accept his no contest plea, the trial court never informed appellant that he could request a continuance to seek a lawyer, or that if he was indigent, the court would appoint a lawyer for him. Likewise, appellant was not advised of any additional rights which he would be forfeiting by virtue of his no contest plea. The trial court did require that appellant sign a written waiver of counsel form prior to accepting his plea. Citing *Schniable, supra,* and *Garfields Heights, supra,* that a meaningful dialogue between the trial court and a defendant is required whenever the possibility of incarceration exists and a written waiver of counsel does not satisfy such requirement, the *Groner* court found that the trial court failed to address the rights which appellant would forfeit in offering a no contest plea. *Id.* at *5. Therefore, the trial court erred in accepting appellant's no contest plea without first having a meaningful dialogue with him on the record.

{¶15} In *State v. Gearig, supra,* the appellate court found the record did not contain any evidence that the trial court engaged in a full discussion of appellant's rights. *Id.* at ¶ 12. The trial court inquired of appellant only if he had listened to his "rights." The trial court did not specifically mention appellant's right to counsel, the right to court-appointed counsel (other than in reference to the form to be signed by appellant), or the right to a continuance to secure counsel. The trial

court did not address bail. The trial court also did not note the right to a trial and did not advise appellant of the right to a jury trial, or the need to demand one to preserve that right. The trial court also made no reference to the fact that appellant could remain silent and that all statements could be used against him. The appellate court held that the trial court did not properly advise appellant of his rights under Crim.R. 10(C). *Id.* at ¶ 16.

{¶16} More recently in *State v. Bowers, supra,* Bowers contended that the trial court failed to comply with Crim.R. 10 as it did not discuss bail, the right to a jury trial, or the various pleas available to him. The defense argued the trial court failed to ensure that Bowers understood the general admonitions made to the courtroom during a joint arraignment. The *Bowers* court recognized the law in *Gearig,* where joint arraignment was held insufficient because the trial court failed to ensure that the defendants could understand the advisements due to a noisy environment. *Bowers, supra,* at ¶ 10. However, the *Bowers* court noted that the trial court engaged in both a joint and individual advisement of Bowers' rights pursuant to Crim.R. 5, 10, and 11. The transcript from the joint arraignment portion indicated that the trial court did specifically inform the courtroom of the right to a jury trial, the right to bail, and the various pleas and their effects. The trial court also stated during the joint arraignment that, "[i]f, for any reason, you

don't understand any of your rights, please tell me when you come to the microphone and I'll try to explain them more fully at that time." *Id.* at ¶ 11.

{¶17} In *Bowers*, the defendant did not argue that he was not present or that he failed to understand or hear the colloquy. When the trial court addressed Bowers personally, he twice informed the court that he understood his rights with respect to his guilty plea and waiver of counsel. Therefore, Bowers' argument that the trial court failed to ensure he understood his rights was not supported by the record. The *Bowers* court held because the advisements were provided during the joint arraignment as well as during his individual plea, Bowers' plea was rendered knowingly, voluntarily, and intelligently. *Id.*

{¶18} In the case sub judice, the transcript shows Appellant was jointly arraigned and the video arraignment was referenced at both the plea and sentencing hearings. As in *Bowers*, the trial court engaged Appellant and inquired if he had heard his rights and if he understood them. Prior to accepting Appellant's plea, the trial court read the charge and inquired as follows:

The Court:        Did you hear your rights?

The Defendant:    Yes, sir.

The Court:        Any question about your rights?

The Defendant:    No, sir.

The Court:        Because this carries with it a jail sentence, you're
entitled to a continuance to talk with a lawyer. If you cannot afford a

lawyer, I will refer you to the Public Defender.  Would you like a
continuance so you could talk to a lawyer?

The Defendant:     No, sir.

The Court:           I didn't quite catch that.

The Defendant:     No, sir.

{¶19} The trial court explained Appellant was entitled to a lawyer, that one

would be assigned to him if he was unable to afford one, and that he was entitled to

a continuance to talk with counsel.  However, as in *Gearig*, the trial court did not

explain the right to bail and the right to refrain from making statements.  Similar to

the scenario in *Schniable,* the trial court went from explanation of the Crim.R.

10(C)(1) and (2) rights, to inquiring whether it was his intention to plead no contest

or guilty.

The Court:           Is it your intention to enter a plea of either no
contest or guilty to this offense?

The Defendant:     No contest.

{¶20} The trial court did not again elaborate on the enumerated rights of

Crim.R. 10(C)(3) and (4).  However, at this point, the dialogue between Appellant

and the trial court continued as follows:

The Court:           Okay.  Again, you do understand that if I accept
that plea, the officer is going to show you a form.  You're going to
sign where you acknowledge your rights, you're going to sign where
you give up your right to a Jury Trial, and you're waiving your right
to have an attorney represent you in this case.  If that's what you want
to do, I need your signature in three places.

The Court:            All right.  Mr. Cisler, I notice that you've signed that document.  Again, to the charge of an M-4 domestic violence, how do you plead?

The Defendant:     No contest.

{¶21} Here, while the trial court did not follow up by reiterating the right to bail and the right against self-incriminatory statements, the trial court did have Appellant review a rights' waiver, which contained a complete listing of the required rights, and sign it.  The judge then engaged in dialogue with Appellant regarding the facts of the charge.  At this point, the trial court read the circumstances surrounding the filing of the charge, including the officer's report of the incident and the officer's statement regarding his interview with Appellant.  The trial court then asked Appellant:  "Is there anything you want to tell me about this?"  Appellant then made some statements regarding specific facts in the incident.  The trial court again inquired; "And is there anything else you want to tell me?"  After a brief exchange again regarding specific facts, the trial court inquired: "Is there anything else?"  Appellant replied: "No, sir."

{¶22} Before accepting the plea, the trial court then stated:

"Now, you understand, I'm about to accept your waiver of a Jury Trial, your waiver of an attorney, and I'm about to accept your No Contest plea, and when I do, you will not be having a trial to a Court or a Jury.  You give up all rights that go with it, that you acknowledged you understood that.  And that I'm going to be making a finding of guilty, and once I've made that finding of guilty, it's

virtually impossible for you to take that back.  So do you want to stand on your no contest plea?"

The Defendant:     Yes, sir.

The Court:          All right.  And are you doing that voluntarily?

The Defendant:     Yes, sir.

The Court:          And are you a U.S. Citizen?

The Defendant:     Yes, sir.

The Court:          I'm going to find your plea was knowingly, intelligently and voluntarily made, and make a finding of guilty. Now is there anything you want to tell me before I sentence you?

The Defendant:     Sir, I'd like to return to work on Monday.

{¶23} At this point, Appellant explained that he was a pipe line worker.  The trial court then decided to continue sentencing to later the same day so that the probation department could assess Appellant, enabling the court could to decide the appropriate punishment.  The trial court appears to have been trying to accommodate Appellant's desire to return to work.

{¶24} Based on this record, we find the trial court engaged in a meaningful dialogue with Appellant.  Appellant did acknowledge he viewed and heard the video arraignment.  The record also contains a form captioned "Acknowledgement of Rights-Misdemeanor."  At the top of the form is stated: "The following are your rights in Court.  The document provides in pertinent part:

"The following are your rights in Court.  Read them carefully.  If you have questions concerning any of these rights you may ask the Judge when your case is called."

\* \* \*

4.  You need make no statement at any point in the proceedings, but any statement made may be used against you.

\* \* \*

6.  You have a right to bail.

\* \* \*

"I am able to read and understand this document or the Judge has explained it to my full satisfaction."

{¶25} Appellant signed the waiver in three places.  Appellant was advised of his rights first by video, which he acknowledged to the judge when questioned.  Appellant told the judge he had no questions.  Appellant signed a waiver which again advised him of his rights, and advised him to ask any questions when his case was called.  Before the judge accepted the waiver, he discussed the underlying facts of the charge and asked Appellant three times if there was anything he wanted to say.  Then, after the court accepted the waiver, the judge again asked Appellant if he still wanted to enter the no contest plea.

{¶26} Again, based on the record, we find a meaningful dialogue regarding

Appellant's Crim.R. 10 (C) rights took place and we do not find prejudice requiring vacation of Appellant's no contest plea. The judge gave Appellant several opportunities to speak and to ask questions. Appellant declined to do so. As such, we find no merit to Appellant's argument that because the trial court did not advise him of his right to bail, his plea was less than knowing, intelligent, and voluntary.

{¶27} Within the sole assignment of error, Appellant next contends that his crime fits within the federal definition of crimes/convictions which cause a person to lose the right to carry a firearm. He argues he "may" lose his second amendment right to keep and bear arms. The State responds, however, that the trial court's statement in this regard correctly summarized the language of R.C. 2943.033(C). We begin by observing that while the Court is free to jointly discuss assignments of error, Appellant is not. *State v. Thompson,* 4th Dist. Washington No. 13CA41, 2014-Ohio-4665, ¶ 10; *Wright v. Suzuki,* 4th Dist. Meigs No. 13CA2, 03CA3, 03CA4, 2005-Ohio-3494, Fn. 9. In the interests of justice, however, we will consider Appellant's second argument herein.

{¶28} R.C. 2943.033(C), the statute which governs the court's duty to advise a defendant of the possibility of firearms restrictions in conjunction with a criminal conviction, provides:

> (C) Prior to accepting a guilty plea or plea of no contest to an indictment, information, or complaint that charges a person with a

misdemeanor offense of violence, the court shall inform the defendant either personally or in writing that under 18 U.S.C. 922(g)(9) it may be unlawful for the person to ship, transport, purchase, or possess a firearm or ammunition as a result of any conviction for a misdemeanor offense of violence. The plea may not be vacated based on a failure to inform the person so charged regarding the restrictions under 18 U.S.C. 922(g)(9).

{¶29} The State urges that the trial court advised Appellant in writing and on the record and that Appellant executed a form acknowledging his understanding. Further, the State points out that Appellant cites no authority to suggest that the dual notices were not sufficient. The transcript demonstrates that at the plea hearing, the trial court read the complaint to Appellant and explained the possible maximum penalties. Before Appellant entered his no contest plea, the trial court further stated "[It is possible that the Federal government would look upon this offense as one that could preclude you from having a firearm. It's not an absolute, but it has happened to people in the past."

{¶30} After Appellant entered his plea, this dialogue occurred:

The Court:          We're going to be sending over a firearm disqualification. It will be sent over. It requires your review, and it will require that you sign at the bottom that you've been advised about the firearm disqualification. Do you understand what I just said?

The Defendant:     Yes, sir.

The Court:          So again, that usually keeps you from working any place where you would have a firearm, being in the military, police, etc. And of course, if you're a hunter, that presents a real problem. You won't be hunting.

{¶31} When the court reconvened for Appellant's sentencing later the same day, the trial court engaged Appellant as follows:

The Court:          All right.  Now, there's a form I believe we sent over there that's a notification form, about those firearms, and I don't know if you have seen that and signed it.

The Defendant:     Yes, sir, I signed it.

The Court:          You did.  Okay.  The Bailiff is telling me you have signed it.  Very good.  So you understand that again, no firearms?

The Defendant:     It says on the paper that a person may not, so I cannot have any firearms, correct?

The Court:          That's correct.

The Defendant:     Okay.

The Court:          At least for certainly during this year.

{¶32} In *State v. Taylor,* 2nd Dist. Greene No. 2010-CA-46, 2012-Ohio-963, the defendant contended that his plea was not knowingly, intelligently, and voluntarily made because, had he known about the federal restriction against possessing a firearm established by 18 U.S.C. 922(g)(9), he would not have pled to the domestic violence charge. 18 U.S.C. 922(g)(9) states:

"It shall be unlawful for any person who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

{¶33} *Taylor* pointed out, pursuant to R.C. 2943.033(C) the trial court was

required to inform him of the federal firearm restriction that would arise as a result

of this particular federal statute if he were convicted of domestic violence. The

court first considered the thoroughness of Taylor's Crim.R. 11 hearing at the time

that it was held. Taylor did not deny that he was afforded a full and proper

Crim.R. 11 hearing on the relevant date. The appellate court observed at ¶ 34:

> "In effect, Taylor asks us to ignore the final sentence of R.C.
> 2943.033(C), which specifically prohibits a trial court from vacating a
> plea based upon the court's failure to inform the defendant of the
> firearm restrictions imposed by 18 U.S.C. 922(g)(9). While the
> General Assembly has decided to require trial courts to advise
> defendants of this federal restriction, the legislature has chosen not to
> allow a defendant who is not advised of the restriction to withdraw his
> plea due to the lack of notice. In other words, the General Assembly
> has prescribed that trial courts should advise defendants of the federal
> firearm restriction, but it has deliberately chosen to prescribe no
> consequence resulting from a trial court's failure to do so.
>
> * * *
>
>  Furthermore, a trial court is not required to determine, and advise a
> defendant of, every collateral consequence that may result from a plea
> to a misdemeanor in order to render that plea knowing and voluntary.
> *Taylor,* at ¶ 35; *State v. Wilkinson,* 2nd Dist. Montgomery No. 20365,
> 2005-Ohio-314, ¶ 9."

**{¶34}** The appellate court held because Taylor's [] plea was knowingly,

intelligently, and voluntarily made, the assignment of error challenging his

notification with regard to the firearms should be overruled. We believe the same

rationale applies in the case sub judice. Here, the record indicates Appellant was

advised twice about the possible firearms restriction and signed a form

acknowledging the possible restriction.  Moreover, because Appellant's plea was knowing, intelligent, and voluntarily made, his argument is without merit.  For the foregoing reasons, Appellant's sole assignment of error is overruled.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:    Concurs in Judgment and Opinion.
Harsha, J.:   Concurs in Judgment Only.

For the Court,

BY: _____
Matthew W. McFarland, Judge

## NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**